### W. C. BARKER v. IOWA MUTUAL INSURANCE COMPANY.

(Filed 14 January, 1955.)

**1. Insurance § 19c—**

A provision in a policy of fire insurance including in its coverage personalty of insured "while elsewhere than on the described premises . . ." does not limit the period during which the property may be "elsewhere," and it will be assumed that the only limitation as to time is the life of the policy.

**2. Domicile § 1—**

A minor dependent son who moves from his father's house to an apartment, maintained by his father, for the purpose of attending classes at an educational institution does not become a resident of the college community, but retains his residence with his father.

**3. Insurance § 19c—**

The policy of fire insurance in suit provided coverage of the described personalty belonging to the insured or any of his family residing with insured. *Held:* Insurer is liable for the destruction of the described property while used by insured's minor son in an apartment maintained by the father for the son while attending classes at an educational institution, since under the facts the son continued to reside with insured within the meaning of the policy.

**4. Insurance § 13a—**

Since insurance policies are prepared by insurer, they must be construed liberally in favor of insured and strictly against insurer.

BARKER v. INSURANCE CO.

APPEAL by defendant from *Phillips, J.*, August Term, 1954, ALLE-GHANY.

The defendant issued to the plaintiff a fire insurance policy in the sum of $6,500.00, covering the contents of a certain described dwelling occupied by the plaintiff and the members of his family in the Town of Sparta. At the time the policy went into effect the insured's family consisted of himself, his wife, a son, Bill Barker, age 19, and the son's wife, age 18, all living together in the described dwelling. The policy provided: "The insured may apply up to ten per cent (10%) of the amount specified . . . to cover property described . . . belonging to the insured or any member of the family of and residing with, the insured, while elsewhere than on the described premises . . ." At the trial the following stipulation was entered into:

"1. That the defendant issued to the plaintiff a policy of fire insurance as set out in the complaint.

"2. That there was a loss by fire amounting to $1,937.75, which occurred in an apartment in Raleigh, North Carolina, occupied by the minor son of the plaintiff and the wife of said minor son, and that the property destroyed and damaged was the property of the insured, W. C. Barker, and the clothing of his son and daughter-in-law.

"3. That the apartment was rented by W. C. Barker and the rent was being paid by him.

"4. That the apartment was furnished by W. C. Barker with furnishings taken from his home in Sparta."

In addition to the stipulation, the insured testified that his son is an only child; that he is 19 years of age and that his son's wife is 18. The apartment was temporarily set up in Raleigh in order that the son might attend classes at State College.

A jury trial was waived, the case tried before Judge Phillips. At the close of plaintiff's evidence, defendant moved for judgment of nonsuit, which was denied. The defendant excepted. The court rendered judgment for $650.00 in favor of the plaintiff, to which the defendant excepted, and from which he appealed.

*R. F. Crouse for plaintiff, appellee.*
*Worth B. Folger for defendant, appellant.*

HIGGINS, J. The facts in this case are not in dispute. The policy covered the contents of the dwelling occupied by the insured and the members of his family, including his wife, his dependent son, Bill Barker, 19, and the son's wife, 18, who constituted the members of the household. At the time the policy was issued all the property later lost by fire was in use by the members of the family in the dwelling in Sparta.

Subsequently, the insured rented an apartment in Raleigh for the use of his son and the son's wife while the son attended classes at State College. The furnishings lost when the Raleigh apartment burned were moved from the Sparta home by the insured, who paid the rent on the apartment. The maximum recovery permitted by the ten per cent clause in the policy was $650.00. It is admitted that the loss sustained by reason of the fire was $1,937.75. The recovery is made to depend upon the interpretation of the following provision in the policy:

"The insured may apply up to ten per cent (10%) of the amount specified for the household and personal property item to cover property described therein and insured thereby (except rowboats, canoes, animals and pets) belonging to the insured or any member of the family of and residing with, the insured, while elsewhere than on the described premises but within the limits of that part of Continental North America included within the United States of America, Alaska, the Dominion of Canada and Newfoundland; however, it is warranted by the insured that such extension of this insurance shall in no wise inure directly or indirectly to the benefit of any carrier or other bailee."

Since no duration of time is fixed in which the property may be *elsewhere,* we may assume the only limitation is the life of the policy. Somewhat more troublesome is the requirement "belonging to the insured or any member of the family of and residing with, the insured, while elsewhere than on the described premises." The expression in the policy, "residing with," is equivalent to and means having his residence with. It, therefore, becomes pertinent to inquire where the minor son had his residence at the time of the loss. Residence has been variously defined by this Court. The definitions vary according to the purposes of the several statutes referring to residence and the objects to be accomplished by them. Definitions include "a place of abode for more than a temporary period of time;" in other cases the word residence is construed to mean "domicile," signifying a permanent and established home. The definitions of residence range all the way between these extremes. *Chitty v. Chitty,* 118 N.C. 647, 24 S.E. 517; *Carden v. Carden,* 107 N.C. 214, 12 S.E. 197; *Sheffield v. Walker,* 231 N.C. 556, 58 S.E. 2d 356; *Bryant v. Bryant,* 228 N.C. 287, 45 S.E. 2d 572; *Reynolds v. Cotton Mills,* 177 N.C. 412, 99 S.E. 240; *Watson v. R. R.,* 152 N.C. 215, 67 S.E. 502.

Does a minor and dependent son who moves to an apartment maintained by his father for the purpose of attending college classes become a resident of the college community, or does he retain his residence with his father? G.S. 116-143 provides that State institutions of higher learning, including State College, are empowered to fix tuition fees. G.S. 116-144 provides higher fees from nonresidents may be charged. "The provisions of this article shall not be construed to prohibit the several boards of

trustees from charging nonresident students tuition in excess of that charged resident students." Certainly, in so far as the right to charge tuition fees is concerned, students who attend from out of state remain nonresidents of the State. Students who are residents of the State do not become residents of the college community merely by occupying a room or apartment and attending classes. Such would seem to be the reasonable interpretation of the term "residence." To say the son ceased to be a resident of Sparta and became a resident of Raleigh under the facts of this case would be giving to the term "residing with the insured" its most narrow and restricted meaning. It must be remembered that the policy of insurance was written by the company's lawyers and that the courts must, therefore, in case of doubt or ambiguity as to its meaning, construe the policy strictly against the insurer and liberally in favor of the insured. The following is a pertinent quotation from the opinion of *Chief Justice Stacy* in the case of *Roberts v. Ins. Co.,* 212 N.C. 1, 192 S.E. 873 : "Policies of insurance differ somewhat from other contracts, however, in respect to the rules of construction to be applied to them. They are unipartite. They are in the form of receipts from insurers to the insured, embodying covenants to compensate for losses described. They are signed by the insurer only. In general, the insured never sees the policy until after he contracts and pays his premium, and he then most frequently receives it from a distance, when it is too late for him to obtain explanations or modifications of the policy sent him. The policy, too, is generally filled with conditions inserted by persons skilled in the learning of the insurance law and acting in the exclusive interest of the insurance company. Out of these circumstances the principle has grown up in the courts that these policies must be construed liberally in respect to the persons insured, and strictly with respect to the insurance company." *Ins. Co. v. Wilkinson,* 13 Wall. (80 U.S.), 232.

The very fact the loss is limited to ten per cent of the full coverage indicates the insurer is willing to take some extra risk in order to make the policy more attractive to those who spend a part of their time away from the family residence. A case in point is *Central Manufacturers' Mutual Ins. Co. v. Friedman,* decided in 1948 by the Supreme Court of Arkansas, and reported in 209 S.W. 2d 102. In that case the policy insured against loss by theft of not to exceed ten per cent of the full coverage of "personal property owned, used or worn by the persons in whose name the policy is issued and members of the insured's family of the same household." The insured's son was a minor who attended Ohio State College for three months, then was inducted into the United States Army, attended officers' training school, was commissioned and assigned to duty at Fort Eustis, Virginia. While serving there, his locker was broken into and personal property stolen. The Court held that the son

We conclude that the facts in this case are sufficient to support the findings and judgment.

Affirmed.