103 N.J. Super. 201 (1967)
247 A.2d 20
ARTHUR A. WEST, JR., AND PATRICIA C. WEST, PLAINTIFFS,
v.
WILLIAM R. MACDONALD, INDIVIDUALLY AND t/a MACDONALD'S SUPPLY CO., DEFENDANT AND THIRD-PARTY PLAINTIFF-APPELLANT,
v.
GLENS FALLS INSURANCE COMPANY AND STEVEN W. BARRETT, THIRD-PARTY DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 15, 1967.
Decided June 5, 1967.
*204 Before Judges CONFORD, FOLEY and LEONARD.
Mr. Charles M. Egan, Jr. argued the cause for third-party plaintiff-appellant (Messrs. Egan, O'Donnell, Hanley & Clifford, attorneys).
Mr. Mark D. Larner argued the cause for third-party defendant-respondent Glens Falls Insurance Company (Messrs. Budd, Larner, Kent & Gross, attorneys).
Mr. Marvin A. Sachs argued the cause for third-party defendant-respondent Steven W. Barrett (Messrs. Feuerstein & Sachs, attorneys).
The opinion of the court was delivered by CONFORD, S.J.A.D.
The plaintiffs West sued MacDonald for negligence in the servicing of their swimming pool resulting in its substantial damage. MacDonald filed a third-party complaint (1) against Glens Falls Insurance Company ("Glens Falls," hereinafter) for indemnification *205 of his liability to the Wests and for reimbursement of the costs of the defense against the Wests' action, pursuant to an insurance policy held by MacDonald for manufacturers' and contractors' liability; and (2) against Steven W. Barrett, an insurance agent, for negligence in the writing of the Glens Falls policy resulting in disclaimer of liability on the policy and of the obligation of defense against the Wests' claim by Glens Falls.
The pretrial order having intended to provide that the claims of MacDonald against Glens Falls and Barrett should be tried "and disposed of" in advance of the Wests' action against MacDonald,[1] this course was followed with these results. The trial judge found as a matter of law that there was no coverage under the policy for "completed operations" and also that the damage here involved occurred after MacDonald's work for the Wests was completed. He consequently held as a matter of law that Glens Falls was under no obligation to MacDonald, either for indemnification or defense, and the first count of the third-party complaint was struck. The issue of Barrett's liability for negligence was submitted to the jury and Barrett was awarded a no cause for action, the jury specifically announcing it found "Steven W. Barrett not negligent."
MacDonald on this appeal challenges the trial court's rulings and the judgment entered on the jury verdict.

I
We consider first the decision of the trial judge that the policy unambiguously excludes coverage for "completed operations." A brief summary of the facts developed at the trial is necessary.
Beginning in 1961 MacDonald agreed to service the West swimming pool on a regular basis. There was to be a spring service to open the pool and a fall service to close it. The spring service entailed removal of water, cleaning, repainting *206 if necessary, servicing motors and bearings, installing diving boards, ladders, etc., and placing algacide and chlorine in the water  generally getting the pool in usable condition for the summer.
In early April 1964, since the Wests were going on vacation and wanted the pool water lowered for the safety of their children, MacDonald sent two men to the premises who decided that the pool was "in pretty bad shape" so that they might as well empty the pool and clean it, in accordance with regular spring practice. They did so, and then started running the water into the pool. As it would take about two days to get an adequate amount of water into the pool, the men left and the Wests were to turn the water off when the deep end of the pool was filled. The remainder of the spring servicing procedure was to await the return of the Wests. This would include, in addition to the other items mentioned above, the repair of a small crack.
About May 1, 1964 West informed MacDonald that in his absence the pool had risen out of the ground. Inspection disclosed a rise of about a foot and a cracking of the pool deck and patio. The complaint filed by the Wests charges the damage was caused by insufficient refilling of the pool in accordance with MacDonald's instructions and a resulting "sub-pool Hydrostatic pressure."
MacDonald's call upon Glens Falls to defend the Wests' suit was rejected on the ground that this was a "completed operation" hazard not covered by the policy issued to MacDonald.
Under "Insuring Agreements," the policy in question deals first with coverages. Hazards in respect of which the company undertakes to reimburse for liability of the insured for bodily injury and property damage are divided into four divisions: 1  Premises-Operations; 2  Elevators; 3  Independent Contractors; and 4  Products-Completed Operations. The hazard, "Premises-Operations" is defined as "The ownership, maintenance of premises, and all operations." *207 The material portion of the definition of "Completed Operations" is as follows:
"(2) operations, including any act or omission in connection with operations performed by or on behalf of the named insured on the premises or elsewhere and whether or not goods or products are involved in such operations, if the accident occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the named insured; provided operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; * * *" (emphasis added)
There is also an "Interpretive Endorsement" on the policy which states:
"It is understood and agreed that the word `operations' as used in the Products-Completed Operations Hazard includes any act or omission in connection with operations performed by or on behalf of the named insured on the premises or elsewhere, whether or not goods or products are involved in such operations."
Item 3 of "Declarations" of the policy reads:
"Item 3. The insurance afforded is only with respect to such and so many of the following coverages and divisions thereunder as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage and division shall be as stated herein, subject to all the terms of this policy having reference thereto."
Directly below the foregoing legend is a series of vertical columns designed to list premiums and premium rates corresponding with the four different hazards of the policy form, all of which hazards are blocked off vertically in the last column. In the actual policy here issued premiums and premium rates are shown only in the boxes opposite the hazard, "Division 1. Premises-Operations," set forth in the last column, and further particularized as "Lackawanna Place, Morristown, Morris Co., N.J. No. 169 (17) Warehouses-Private-Mercantile Building * * *" (where MacDonald's headquarters are located). Prima facie, accordingly, *208 the only one of the four divisions of hazards included for coverage within the specifying limitation of Item 3, quoted above, is "Division 1. Premises-Operations," and not "Division 4. Products-Completed Operations," Cf. Ohio Cas. Ins. Co. v. Flanagin, 44 N.J. 504, 518 (1965).
It is implicit in the decision of the trial court, and not disputed by MacDonald, that his conceded coverage under Division 1 is subject to exclusion for any operations falling within Division 4 if the policy coverage is properly held not to extend to the latter.
MacDonald seeks to avert the limiting effect of Item 3 by showing an alleged ambiguity in the schedule of amounts of coverage under Item 3 in that the coverage B column (Property Damage Liability) reads:

 "$5,000
 $25,000 (applies to Divs. 1, 3 & 4)"[2]
However, reading the foregoing in the context of the whole policy, there is no ambiguity as to whether the policy covers hazard Division 4. The corresponding listing of limits for Coverage A Bodily Injury Liability reads:

 "$100,000
 $300,000
 (applies to Div. 4 only)"[fn2]

It is clear to us that the printed excerpts in parentheses merely indicate what hazards in the policy form are covered by the named categories of coverage, i.e. bodily injury or property damage. It is commonplace for policy forms to have blanket printed provisions the applicability of which to the specific individual insurance is dependent on other appropriate indications in the policy. Therefore, nothing in the foregoing creates such an ambiguity as reasonably warrants a determination that this policy should be held to *209 cover completed operations on the principle or resolving ambiguities in favor of the insured.
MacDonald also argues that since this policy carries the "Interpretive Endorsement" mentioned above as to "Products-Completed Operations Hazard" it evidences an intention for the policy to include that hazard (apart from the content of the definition). Since, however, the scope of Hazard Division 4 will operate, as noted above, to define in effect an exclusion from Division 1, the interpretive endorsement is appropriate and does not necessarily imply that the policy covers Division 4. Moreover, there are several other endorsements, all, including that already mentioned, apparently printed together, and some having no relationship to a "Manufacturers and Contractors' Liability Policy." In other words, some of these other endorsements are pure surplusage in relation to the basic character of the particular policy involved. The printing of this endorsement as an addendum to the policy creates no ambiguity helpful to MacDonald.
MacDonald relies upon Portella v. Sonnenberg, 74 N.J. Super. 354 (App. Div. 1962). It is not here apposite. That was primarily a determination that a case for reformation of an insurance policy was made out on the basis of the circumstances surrounding the issuance of the policy coupled with some misleading features of the policy language.
In the instant case, one in which the language of the policy itself cannot reasonably be read to include coverage for liability in relation to completed operations, the third-party plaintiff cannot take any comfort in this regard from the proofs concerning the circumstances attending the issuance of the policy, in view of the verdict of the jury on the issue of Barrett's alleged negligence. The nub of the dispute between MacDonald and Barrett was the factual issue whether completed operations had been discussed between them when the policy was written. MacDonald testified that the subject was never mentioned  that all he had specifically refused as products liability insurance (note that *210 products liability and completed operations are combined as a unit comprising Division 4 of Hazards under the policy). Otherwise, he wanted to be fully covered. Barrett, on the other hand, testified that he discussed both products liability and completed operations coverage with MacDonald on at least three different occasions and the latter refused it because the additional premium would have been between $300 and $500, more than he could afford. It is fairly evident that in returning its verdict absolving Barrett of negligence in writing the insurance the jury was accepting Barrett's and rejecting MacDonald's version of the transaction.
We conclude that neither the language of the policy nor the surrounding circumstances warrant a determination that MacDonald should be deemed to have been covered for completed operations liability by the Glens Falls Company, giving complete recognition to the principle that the insured will be protected to the full extent that any fair interpretation of the policy will allow. Danek v. Hommer, 28 N.J. Super. 68, 76 (App. Div. 1953), aff'd. 15 N.J. 573 (1954).

II
We turn next to the trial court's decision that the facts here dictated a conclusion as a matter of law that MacDonald's operation at the West premises was completed within the meaning of the policy, so as to exclude liability on the facts of the case and relieve Glens Falls of the duty to defend. MacDonald argues that the issue of completion should have been submitted to the jury.
It should be noted, preliminarily, that both sides tried the case below and argued the appeal on the implicit assumption, originally determined at the pretrial conference, that the issues both of coverage and Glens Falls' duty to defend the Wests' claim should be tried out to a finality prior to trial of the negligence action. But compare Ohio Cas. Ins. Co. v. Flanagin, supra.
We think MacDonald is correct in his assertion that the question whether the operations were "completed" when *211 the damage occurred constituted an issue of fact for the jury rather than one of law. See Van Der Veen v. Bankers Indemnity Ins. Co., 30 N.J. Super. 211, 216-217 (App. Div. 1954), where an assumption to that effect was indulged in a comparable situation.
It is true that there was no dispute of fact as to the operative circumstances related by MacDonald concerning the arrangements for the doing of the work with West and as to what was done and what remained to be done. But disputable conclusory inferences sometimes fall into the category of disputed fact for purposes of allocation to the jury rather than the judge (e.g. negligence), and we are clear that this is so in relation to an issue of completion of a contracted operation. See, generally, Thayer, "`Law and Fact' in Jury Trials," 4 Harv. L. Rev. 147, 151-152; cf. Bass v. Allstate Ins. Co., 77 N.J. Super. 491, 495 (App. Div. 1962). We think reasonable men could differ here as to whether this job was completed or not, even in the light of the policy proviso that "operations shall not be deemed incomplete because * * * further operations may be required pursuant to an agreement." That language is somewhat ambiguous. Almost every ongoing contract operation may be said to involve a situation where further "operations" are required by the agreement. An overliteral reading of the clause could render it destructive of the coverage as to some indisputably incomplete operations. It seems to us that the clause means only that the mere fact that further operations may be required does not necessarily stamp the operation as a whole as incomplete. It does not mean that the requirement of further operations can never be indicative of the incompleteness of the operation as a whole for purposes of coverage under Division 4.
Glens Falls argues that the issue here is simply one as to whether the facts related by MacDonald fall within the judge's construction of the completed operations clause. We do not agree. The judge was not resolving competing theories as to the meaning of the clause. He was deciding that a particular *212 set of circumstances constituted "completion" of a contract performance. However, as we see it, that conclusion is a factual one as to which there could be reasonable dispute, and therefore it was for the jury.

III
Glens Falls argues it was properly excused from the obligation to defend the Wests' claim since the coverage of the policy did not extend to the facts of the present claim. However, as held above, the question whether this policy covers MacDonald's liability to West will be decided on the basis of the jury verdict at the retrial of the third-party claim. If Glens Falls prevails, it will be relieved of the defense of the Wests' claim thereafter; otherwise not.
However, a distinction must be drawn between the defense expenditures and obligations incurred by MacDonald heretofore and to be incurred hereafter until the third-party claim for coverage is decided at the retrial, on the one hand, and such defense activities as will be necessary after determination of the third-party claim, on the other. As to the former, Glens Falls' obligation must be determined on the basis of the rule that where the policy, as here, requires the insurer to defend even if the damage claim is groundless, false or fraudulent, "the damage complaint is laid alongside the policy and the test is whether the allegations of that complaint, upon its face, fall within the risk insured against." Ohio Cas. Ins. Co. v. Flanagin, supra (44 N.J., at 512); Danek v. Hommer, supra (28 N.J. Super., at 77).
Moreover, if in the process of comparison of the complaint and the policy there should be any fair doubt of whether the latter covers the facts alleged in the complaint the doubt will be resolved in favor of the insured. (Danek v. Hommer, supra (at 77); Annot. 50 A.L.R.2d 458, 504 et seq. (1956). We need not set forth the West complaint at length herein. It suffices to say that it states facts which at least potentially indicate that the accidental damage arose *213 out of an incomplete contract operation and thus within the scope of coverage of the policy as adjudicated above. The duty of defense or reimbursement therefor by the insurer consequently arose to the extent of any defense efforts, expenditures and obligations made or incurred by MacDonald in relation to the West claim or hereafter to be made until the question of coverage is determined at the retrial. It will be for MacDonald to establish the fact and amount of such expenditures at the retrial, and Glens Falls will be liable to MacDonald therefor. If MacDonald prevails at the retrial on the issue of coverage, Glens Falls will of course also have to assume the defense of the West claim thereafter.
It would, however, be inappropriate to hold that Glens Falls must continue to defend the West claim after final determination of the issue of coverage if that issue is decided in its favor. MacDonald joined without objection in the pretrial order directing that the third-party claim be determined as a finality prior to trial of the West action. He has never disputed, and it is implicit in his whole course of conduct in the litigation thus far that he has recognized that the question of coverage, including subordinate issues of fact as well as of law, will be finally adjudicated in the third-party litigation. It would contravene good sense and justice to impose on the insurer a continuance of the burden of defense of the West claim once the issue of coverage is definitively settled in its favor.

IV
MacDonald seeks to upset the exculpation of Barrett for negligence on several grounds.
He objects to the court's charge to the jury with relation to his failure to read his policy as evidence of his own negligence. However, in objecting to this portion of the charge at the trial MacDonald failed to apprise the court distinctly of the nature of his objection, as is required. Moreover, the verdict of the jury was based, as noted above, upon an express finding that Barrett was not negligent rather *214 than that MacDonald was contributorily negligent. There is no prejudice.
Claim is made of error in the charge in relation to the standard of care owing by a broker. No exception was taken thereto at the trial. In any case, we find no error, considering the charge in entirety.
Finally, objection is raised to the admission of testimony by Barrett as to a conversation with MacDonald after suit was instituted wherein the latter said he would stop the suit. But this was offered as part of a discussion wherein MacDonald assertedly admitted he had discussed completed operations liability with Barrett and refused it. It was therefore relevant and competent as an admission.
Judgment affirmed as to Barrett; reversed as to Glens Falls and remanded for trial on the issues of whether the West contract operation was completed, and the amount of liability to MacDonald for defense of the West claim. Thereupon final judgment on the third-party claim will be entered in conformity with this opinion.
FOLEY, J.A.D. (dissenting in part).
The majority holds that the question of whether or not the work done by MacDonald was a completed operation was for jury determination, hence the trial court was in error. I think otherwise.
The facts were not in dispute. MacDonald was engaged by West for a specific purpose, namely, to lower the water level of West's swimming pool. He did this by running the water from the pool in order to clean it, and that having been done, by arranging to refill the pool to the level desired by its owner. His employees then left West's premises taking with them their equipment. The job was finished.
True, it may have been within the contemplation of the parties that MacDonald would return at a later time, upon West's request, to ready the swimming pool for summer use involving additional work, e.g., painting the pool at the owner's option. But any such work would be unrelated to, distinctly different from, and readily severable from, the job *215 of lowering the level of the pool, which was the "operation" for which the parties contracted. To say that the gap of time between the latter job and the time (if indeed it ever arrived) when West would order additional work, i.e., spring servicing, MacDonald's work in lowering the level of the pool was an "incomplete operation," to my mind is unrealistic and far beyond the reasonable expectations of either party.
Therefore, considering the definition of completed operations as it appears in the policy, particularly that "operations shall not be deemed incomplete * * * because further operations may be required pursuant to an agreement," I see no room for holding that prospects of future operations render the one in question an incomplete operation. Concededly, construction of the insurance contract was for the trial judge and on the facts of this case I am convinced that the judge properly concluded that the work involved constituted a completed operation within the terms of the policy, and that to have submitted that question to the jury would have been error.
I would affirm.
NOTES
[1] By inadvertence the text of the order is to the opposite effect.
[2] The dollar figures are typed in; the remainder is printed.