## MORGAN, LEWIS & BOCKIUS LLP, Plaintiff,

v.

## HANOVER INSURANCE COMPANY, Defendant.

Civil No. 95–5251(JEI).

United States District Court, D. New Jersey.

May 6, 1996.

Thomas M. Kittredge, Princeton, New Jersey, for Plaintiffs, Morgan, Lewis and Bockius LLP.

Francis X. Garrity, Garrity, Graham & Favetta, P.C., Montclair, New Jersey, for Defendant, Hanover Insurance Company.

## OPINION AND ORDER

ROSEN, United States Magistrate Judge.

### I. INTRODUCTION

Presently before the court are the cross-motions for summary judgment of plaintiff Morgan, Lewis & Bockius and defendant Hanover Insurance Company. Plaintiff Morgan, Lewis & Bockius (hereinafter "ML & B") seeks to recover from Hanover Insurance Company legal fees and expenses allegedly due to Cosmetic Gallery, Inc. incurred in the defense of Cosmetic Gallery in connection with the case *Matrix Essentials, Inc. v. Cosmetic Gallery, Inc.*, 870 F.Supp. 1237 (D.N.J.1994), *aff'd*, 85 F.3d 612, (3d Cir.1996) (hereinafter "the *Matrix* litigation") (Plaintiff's Brief at 1).

ML & B, as assignee of Cosmetic Gallery, Inc. (hereinafter "Cosmetic Gallery"), seeks to recover certain disputed costs allegedly owed by Hanover Ins. Co. (hereinafter "Hanover") to Cosmetic Gallery, in relation to the defense of the *Matrix* litigation pursuant to certain policies of insurance issued by Hanover to Cosmetic Gallery. ML & B acted as counsel to Cosmetic Gallery in the *Matrix* litigation. In the course of that action, Cosmetic Gallery incurred $343,384.81 in attorneys' fees and disbursements from ML & B and $10,104.05 in fees and costs from Brown & Connery, Esqs., local New Jersey counsel of Cosmetic Gallery. ML & B requests payment of: (a) the amounts paid by Cosmetic to ML & B, together with interest on those amounts from the date of payment, (b) the amount currently owed by Cosmetic to ML & B together with interest from the date the outstanding ML & B bills were presented and (c) the amount currently owed by Cosmetic to Brown & Connery, together with interest from the date the outstanding Brown & Connery bills were presented. To date, ML & B has received $165,263.16 from Hanover and $18,135.86 from Cosmetic Gallery (Plaintiff's Brief at 10).

Throughout the course of the *Matrix* litigation, ML & B also represented C & L Beauty Supply, Inc., and Charles and Larry Eisenberg in their capacities as officers and major stockholders of Cosmetic Gallery, as well as C & L Beauty Supply. ML & B contends that Hanover is liable for the costs of defending all of the eight claims asserted against Cosmetic Gallery and is therefore responsible for the entire cost of the litigation. Conversely, Hanover accepts responsibility for payment on only four of the eight claims. ML & B also contends that even if Hanover is responsible for only some of the claims, Hanover cannot satisfy its burden of advancing an equitable allocation of the defense costs "due to the fact that the issues of fact and law concerning *Matrix*'s claims against Cosmetic Gallery are so interrelated and intertwined that there can be no reasonable basis for such a proposed allocation." (Plaintiff's Brief at 2).

ML & B has taken the position that under New Jersey law, 1) if a complaint states various theories of recovery and one theory requires coverage, the insurance carrier must defend the entire action, and 2) even if allocation might be permitted under some circumstances, where the claims, facts and issues are so interrelated and intertwined as not to permit allocation on any reasonable basis, no allocation is permitted. (Plaintiff's Brief at 12). In addition, ML & B asserts that each individual cause of action asserted by Matrix in the underlying action is based on the totality of Cosmetic Gallery's alleged conduct and that "Matrix's claims against Cosmetic Gallery consist of the same set of operative facts with eight separate legal labels." (Plaintiff's Brief at 5).

In contrast, the defendant posits that even though some of the claims asserted against Cosmetic Gallery are certainly covered by the insurance policies, there should be a proportionate allocation of the costs to defend

the *Matrix* litigation between the covered and non-covered claims.

Pursuant to the Stipulation and Order of the Honorable Joseph E. Irenas dated October 26, 1995, ML & B and Hanover have agreed to file cross motions for summary judgment as to the issues related to the balance of the counsel fees claimed to be owing. The parties have also agreed that the decision that this court will reach is to be final, binding and unappealable.

After careful consideration of the parties submissions and the oral argument on the record on March 13, 1996, and for the reasons noted herein, the motion of Morgan, Lewis & Bockius shall be *denied* and the motion of Hanover Insurance Company shall be *granted.*

## *FACTUAL AND PROCEDURAL HISTORY:*

It is necessary, at this point, to analyze some of the facts concerning the underlying *Matrix* litigation in order to assess the allegations asserted herein.

Cosmetic Gallery operated various retail beauty supply outlets in southern New Jersey with the intent to attract customers by selling hair care and beauty supplies at a discount below the price offered by supermarkets, pharmacies and hair salons.

Matrix Essentials, Inc. (hereinafter "Matrix") manufactured and sold a wide variety of hair care products. In its complaint against Cosmetic Gallery, Matrix alleged that it entered into contractual relationships with beauty salons with the understanding that Matrix products would be sold only to salon clients for their personal use at home. It claimed that Matrix had developed the trade name Matrix and a shield design trademark for use in connection with the sale of its hair care products. Matrix alleged that Cosmetic Gallery and its principals, the Eisenbergs, violated Matrix's rights in that they offered for sale and/or sold Matrix's products in their over-the-counter retail stores. It alleged that the *Matrix* defendants obliterated batch codes and other identifying information with the intent to conceal their actions from the plaintiff. (Defendant's Brief at 4).

On August 12, 1992, Matrix Essentials filed a complaint in the United States District Court for the District of New Jersey asserting eight different causes of action against, *inter alia*, Cosmetic Gallery, C & L Beauty Supply and Charles and Larry Eisenberg, both in their capacities as officers and major stockholder of Cosmetic Gallery and C & L Beauty Supply: 1) violation of the Federal Trademark Act of 1947; 2) trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. § 1051 *et seq;* 3) trademark infringement and violation of statutory and common law unfair competition under New Jersey laws; 4) malicious interference with contractual relations; 5) malicious interference with prospective economic advantage; 6) violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 56: 8–1 *et seq.;* 7) violation of the New Jersey Unfair Competition Act; 8) conspiracy to commit acts of trademark infringement, unfair competition and other tortious conduct. The defendants filed an answer and asserted an antitrust counterclaim. On February 26, 1993, the court granted the *Matrix* defendants' motion to dismiss Matrix Essentials' claim under the New Jersey Consumer Fraud Act, but denied that motion as to all other claims. *Matrix Essentials, Inc. v. Cosmetic Gallery,* 870 F.Supp. 1237, 1239 (D.N.J.1994).

On March 31, 1994, the court granted Matrix's motion for summary judgment on the *Matrix* defendants' counterclaim, and granted in part and denied in part the *Matrix* defendants' motion for summary judgment. The court: 1) denied the *Matrix* defendants' motion on Matrix Essentials' Lanham Act and unfair competition claims to the extent that Matrix Essentials had shown that the Matrix defendants sold defaced Matrix products, but granted the motion to the extent that the defendants had sold unaltered Matrix Essentials products, and 2) granted the *Matrix* defendants' motion for summary judgment on all other claims. *Id.* On July 22, 1994, the court partially granted Matrix's motion for reconsideration, and reinstated its tortious interference with contract claim to the extent that it sought injunctive rather than monetary relief. *Id.*

As a result of *in limine* motions decided October 12 and October 18, 1994 by Judge Irenas, the court excluded as insufficient all Matrix Essentials' evidence of compensatory and punitive damages. *Id.* Therefore, only the injunctive relief remained and the matter was tried by the court on October 17, 18, 20 and 21, and on November 7, 9 and 10, 1994. The court found for defendants on all claims.

In the course of the *Matrix* litigation, Cosmetic Gallery incurred attorneys' fees and costs from ML & B in the amount of $343,384.81. Hanover contends that not all the claims defended by ML & B are covered by Hanover policies. Hanover agreed to pay only fifty percent of the ML & B and the Brown & Connery bills. Hanover based its position upon the case of *SL Industries, Inc. v. American Motorists Ins. Co.*, 128 N.J. 188, 607 A.2d 1266 (1992), which held that in cases where multiple claims are asserted that are both covered and non-covered under a liability insurance policy, the cost of defense should be fairly allocated between the insurer and the insured. *Id.* at 216, 607 A.2d at 1280. Hanover concedes its policies afforded coverage for unfair competition and infringement of copyright, title or slogan. Out of the eight claims Matrix asserted, Hanover afforded coverage for damages contained in the First, Second, Third, Seventh and part of the Eighth Claim.

Hanover denies coverage for the plaintiff's Fourth (malicious interference with contractual relations), Fifth (malicious interference with prospective economic advantage), Sixth (New Jersey Consumer Fraud Act) claims, and that part of the Eighth claim relating to conspiracy to commit acts of tortious conduct. Hanover also claims that coverage under its policy was limited solely to claims for damages and that no coverage is afforded for the defense of plaintiff's claims for injunctive relief or punitive damages. Furthermore, Hanover alleges that it was not aware that ML & B represented both Cosmetic Gallery and C & L Beauty Supply, Inc. as well as Charles and Larry Eisenberg in their capacities as officers and stockholders of both Cosmetic Gallery and C & L Beauty Supply, Inc., a fact which came to the attention of Hanover only after Hanover counsel's review of the file in the *Matrix* litigation. Hanover contends that no coverage is afforded under the insurance policies for C & L Beauty Supply, Inc. or Charles and Larry Eisenberg in their capacities as officers and stockholders of C & L Beauty Supply, Inc. as they are not named insureds under the terms of the policy. Finally, Hanover denies coverage for the counterclaim filed by Cosmetic Gallery, C & L Beauty Supply and the Eisenbergs alleging violation of the Sherman Act by Matrix Essentials. Hanover maintains that no coverage is afforded under the Hanover policies for affirmative claims of relief and for the cost of prosecuting any such claims.

## STANDARD FOR SUMMARY JUDGMENT

A stringent standard governs the granting of summary judgment pursuant to Federal Rule of Civil Procedure 56. A court may grant summary judgment only when the materials of record show that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Tudor Dev. Group, Inc. v. United States Fidelity & Guar. Co.*, 968 F.2d 357, 359–60 (3d Cir. 1992). In determining whether there is a disputed issue of material fact, a court must resolve all reasonable doubts in favor of the non-moving party. *Matsushita Elect. Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Desvi, Inc. v. Continental Ins. Co.*, 968 F.2d 307, 308 (3d Cir.1992). The inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Further, a dispute involving a material fact is "genuine" only "if the evidence is such that a reasonable jury would return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. Whether a fact is "material" is determined by the substantive law defining the claims. *Id.* As the Supreme Court observed: "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude an entry of summary judgment." *Id.*

Where a moving party has made a properly supported motion for summary judgment, it is incumbent upon the nonmoving party to come forward with specific facts to show that there is a genuine issue of material fact for trial. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. Indeed, a court must grant a motion for summary judgment unless the party opposing the motion "can produce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." *J.E. Mamiye & Sons, Inc. v. Fidelity Bank,* 813 F.2d 610, 618 (3d Cir.1987) (Becker, J., concurring) (citing *Anderson,* 477 U.S. at 242, 106 S.Ct. at 2506–07 and *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). Accordingly, the non-moving party "may not rest upon mere allegations or denials" of its pleadings, Fed.R.Civ.P. 56(e), and "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. Thus, if the non-movant's evidence is merely "colorable or is not significantly probative," summary judgment may be granted. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

As the Supreme Court concluded in *Celotex,* "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose." 477 U.S. at 323–24, 106 S.Ct. at 2553.

### ALLOCATION

The recovery sought by ML & B in this action relates to the costs and attorneys' fees expended by ML & B in defending Cosmetic Gallery in the *Matrix* litigation. ML & B seeks to recover all defense costs regardless of whether the expenses related to covered or non-covered claims, arguing that since four of the counts of the complaint in the *Matrix* litigation fell within the coverage of the policy, Hanover had a duty to indemnify Cosmetic Gallery for all the costs incurred in the defense of that action.

Hanover's insurance policies were issued to Cosmetic Gallery in New Jersey. The parties agree that the issues currently before this court are governed by New Jersey Law.

In the leading case *SL Industries, Inc. v. American Motorists Ins. Co.,* 128 N.J. 188, 607 A.2d 1266 (1992), the New Jersey Supreme Court confronted the issue of an insurance carrier's obligations with respect to defense when, within a singular complaint, there are claims that are covered by the policy and other claims that are not. The supreme court noted that few New Jersey cases address the question directly, and ultimately decided the issue as a matter of first impression. *Id.* at 214, 607 A.2d at 1280. The court held that when an insurer wrongfully refuses to defend an action, it is required to reimburse the insured for its defense costs, but its duty to reimburse is limited to allegations covered under the language of the policy, provided that the defense costs can be apportioned between covered and non-covered claims. *Id.* at 214–215, 607 A.2d at 1280. The court further noted that when defense costs cannot be apportioned, the insurer must assume the costs of the defense for both covered and non-covered claims. *Id.* at 215, 607 A.2d at 1280.

However, the court noted that, even though it was adopting the general rule favored by most jurisdictions, "interpretation differs from that of a number of courts that have applied it." *Id.* Other courts assume that apportionment will be very difficult, and that the exception (requiring insurers to pay all of the defense costs) is applied more often than the rule requiring apportionment. *Id.* at 215–216, 607 A.2d at 1280.[1] The court

---

1. New Jersey has a strong policy protecting the insured in the interpretation of insurance contracts. In order to protect the insured and fairly interpret the boundaries of insurance coverage, New Jersey courts give effect to the reasonable expectations of the insured. It is necessary, though, to point out that the consistency of New Jersey's policy in resolving ambiguities in insurance contracts in favor of the insured applies when there are ambiguities or disputes on how to interpret the language of the insurance policy. This court does not believe that any relevant issue on the interpretation of the terms of the insurance policy has been raised in the instant case. *See generally Lee v. Aetna Casualty & Surety Co.,* 178 F.2d 750 (2nd Cir.1949), *Mazzilli v. Accident & Cas. Ins. Co. of Winterthur, Switzerland,* 35 N.J. 1, 170 A.2d 800 (1961), *West v.*

then modified the general rule with respect to the allocation of defense costs between covered and non-covered claims. While other courts require a greater degree of certainty, the New Jersey Supreme Court found that "a lack of scientific certainty, does not justify imposing all of the costs on the insurer by default." *Id.* at 216, 607 A.2d at 1280. When the insured and the insurer cannot agree upon a fair allocation, the supreme court directed trial courts to "analyze the allegation in the complaint in light of the coverage of the policy to arrive at a fair division of cost." *Id.*

■ ML & B contends that the New Jersey Supreme Court, in *SL Industries, Inc.,* did not specify how courts should attempt to apportion defense costs between covered and non-covered claims. *See Voorhees v. Preferred Mut. Ins. Co.,* 128 N.J. 165, 179, 607 A.2d 1255, 1262 (1992). Nevertheless, a principle has emerged from prior New Jersey jurisprudence that courts should construe insurance policies in favor of the insured "without writing for the insured a better policy of insurance than the one purchased." *Walker Rogge, Inc. v. Chelsea Title & Guar. Co.,* 116 N.J. 517, 529, 562 A.2d 208, 214 (1989). *See also Brokers Title Co., Inc. v. St. Paul Fire & Marine Ins. Co.,* 610 F.2d 1174, 1181 (3d Cir.1979) ("it is not the function of the court to redraft a contract to be more favorable to a given party than the agreement he chose to enter.").

In the present case there is no material factual dispute concerning the language of the insurance policy. Both ML & B and Hanover agree that the insurance policy on its face does not provide coverage for damages caused by intentional acts or affirmative action. Moreover, the New Jersey Supreme Court has stated that public policy favors "[t]he exclusion of intentional injury from coverage" in order to prevent individuals from inflicting damage because they know they will be insured. *Voorhees v. Preferred Mut. Ins. Co.,* 128 N.J. 165, 181, 607 A.2d 1255, 1263 (1992) (quoting *Burd v. Sussex*

*MacDonald,* 103 N.J.Super. 201, 247 A.2d 20 (1967), *Danek v. Hommer,* 28 N.J.Super. 68, 100

*Mut. Ins. Co.,* 56 N.J. 383, 398–399, 267 A.2d 7, 14–15 (1970)).

Furthermore, the court believes that most of the New Jersey cases relied upon by ML & B are distinguishable from the instant case. In *Mt. Hope Inn v. Travelers Indem. Co.,* 157 N.J.Super. 431, 440, 384 A.2d 1159, 1163 (1978), the court stated that if the claim states two conflicting theories, one of which requires coverage, the carrier has no choice but to defend. *See also Voorhees,* 128 N.J. at 173, 607 A.2d at 1258 ("the duty to defend is generally determined by comparing the allegations in the complaint with the language of the policy. When the two correspond, the insurer must defend the suit."). Even though case law is unequivocal on the proposition that allegations of mixed conduct alone do not defeat a duty to defend, that is not dispositive of the question of compensation for non-covered claims asserted in an insured's defense. *See Central Nat. Ins. Co. v. Utica Nat. Ins. Group,* 232 N.J.Super. 467, 557 A.2d 693 (1989) ("the duty to defend exists only as to counts stating a theory of recovery for which coverage is provided, but not as to counts not covered.") *Id.* at 470, 557 A.2d 693, 694. *See also City Council of City of Elizabeth v. Fumero,* 143 N.J.Super. 275, 288–289, 362 A.2d 1279, 1285–1286 (1976).

In the current dispute, ML & B alleges that it is the insurer's burden to prove that such an apportionment is necessary and feasible. Relying upon *Ohio Cas. Ins. Co. v. Hubbard,* 162 Cal.App.3d 939, 208 Cal.Rptr. 806, 809 (1984), ML & B urges this court to adopt the California rule that the insurer is responsible for the cost of defending the entire action unless the "insurer produces undeniable evidence of allocability of specific expenses." *Id.* (quoting *Hogan v. Midland Nat. Ins. Co.,* 3 Cal.3d 553, 91 Cal.Rptr. 153, 159, 476 P.2d 825, 831 (1970)). On the other hand, Hanover contends that all the cases relied upon by ML & B in support of its position are California cases. Moreover, this court notes that in *Scottsdale Ins. Co. v. Homestead Land Development Corp.,*

A.2d 198 (1953).

1992 WL 453356 (N.D.Cal.1992), a United States District court distanced itself from the strict rule announced in *Hogan v. Midland National Insurance Co.* stating that: "implicit in *Hogan's* analysis is that the insurer's evidentiary burden in proving allocation is heightened where the insurer's conduct violates its contractual agreement with the insured." *Id.* at *5. Further, the court in *Scottsdale* stated that "where it is clear that the insurer has not breached any of its obligations to its insured, allocation may be determined under the preponderance of evidence standard." *See also Bertero v. National General Corp.*, 13 Cal.3d 43, 63, 118 Cal.Rptr. 184, 197–98, 529 P.2d 608, 622 (1974) (applying preponderance of evidence standard when allocating attorney's fees, and distinguishing *Hogan* on the ground that "[t]he insurer had a preexisting duty to at least initiate a defense, and, because of its breach it was required to assume the heavier burden of establishing proper allocation ...."). Similarly, the New Jersey Supreme Court expressly distanced itself from those courts that refused to allocate, contending that while apportionment of expenses was difficult and not subject to mathematical certainty, it is, nonetheless, appropriate where possible. *SL Industries,* 128 N.J. at 216, 607 A.2d at 1280. Indeed, courts are often called upon to exercise such reasoned discretion where the facts so warrant.

It is important to note that the purpose of an insurance contract is to protect the insured against undesirable contingencies. As such, insurance policies must be interpreted to effect the reasonable expectations of the insured. Obviously, given the nature of the insurance, it would be patently unreasonable to expect an insurer to protect its insured against liabilities for which the insured did not bargain. Any conclusion to the contrary would lead to a windfall for the insured.

With these basic principles in mind, the court will now examine the insurance policies at issue.

In the present dispute, Hanover issued four primary business policies to Cosmetic Gallery from April 6, 1988 through April 6, 1992. Under the four policies, Hanover insured Cosmetic Gallery and its officers and directors for various liability, including "Advertising Offense Liability". With respect to this liability, the policy provided as follows:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as **damages** because of **advertising offense** sustained by any person or organization and arising out of the conduct of the named insured's business, if the offense is committed during the policy period within the policy territory, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such injury or even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it seems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

(Appendix of Hanover Insurance Company in support of motion for Summary Judgment attached as Ex. K, at p. 15) (emphasis added). Under the sub-paragraph titled "Additional Definitions", the advertising offense is further defined as follows:

> 'Advertising offense' means injury occurring in the course of the named insured's advertising activities, if such injury arises out of libel, slander, defamation, violation of right of privacy, piracy, unfair competition, or infringement of copyright, title or slogan.

*Id.* The term "damages" is defined as follows:

> 'Damages' means only those damages which are payable because of advertising offense arising out of an offense to which this coverage applies.

*Id.* Nowhere in the policy is there any mention that Hanover would pay for affirmative prosecution of a civil action by Cosmetic Gallery. The court finds the policy language to be clear and unambiguous. *See also Longobardi v. Chubb Ins. Co. of New Jersey,* 121 N.J. 530, 537, 582 A.2d 1257, 1260 (1990) ("[T]he words of an insurance policy should

be given their ordinary meaning, and in the absence of an ambiguity, a court should not engage in a strained construction to support the imposition of liability.")

 ML & B asserts that a comparison of the causes of action alleged against Cosmetic Gallery shows that those claims have various interrelated and intertwined issues of fact and law. ML & B contends that it is not possible to distinguish between ML & B's general trial preparation and any preparation specific to a non-covered claim or to relief seeking punitive damages or an injunction. ML & B further contends that all the depositions of the various parties to this action constitute general trial preparation and, thus, cannot be identified as an expense for a specific claim. (Plaintiff's Brief at 24). ML & B also argues that "unfair competition" is broadly defined as "the umbrella for all statutory and non-statutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters." *American Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 14 (5th Cir.1974). In addition, unfair competition under section 43(a) of the Lanham Act is defined as "any commercial activity that is likely to cause confusion or mistake, or to deceive as to affiliation, connection, or association of the one person with another, or as to the origin, sponsorship, or approval of one's goods or service". ML & B asserts similarly that, to recover for trademark infringement, a plaintiff generally needs to show that its trademarks are being used in commerce without its consent in a manner that is likely to cause confusion or mistake, or to deceive. *See Burger King Corp. v. Mason*, 710 F.2d 1480, 1491 (11th Cir.1983), *cert. denied*, 465 U.S. 1102, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984). ML & B further asserts that no apportionment of defense costs can be made between unfair competition and the tortious interference claims because both require a showing of improper conduct on the part of the defendant. Therefore, ML & B argues that due to the similarities in the causes of action, it is impossible to rationally determine which costs were incurred in defending the unfair competition claims as opposed to the costs incurred in defending the tortious interference claims.[2] ML & B also claims that Matrix's trademark infringement claims are

---

2. ML & B also contends that the insurer is obligated to defend an action whenever the complaint alleges a basis of liability within the covenant to pay. *Ohio Cas. Ins. Co. v. Flanagin*, 44 N.J. 504, 514, 210 A.2d 221, 226 (1965). This court does not dispute the existence of the duty to defend on the part of the insurer. We believe though, that the issue in the case at bar concerns the scope of the duty. In *Hartford Acc. & Indem. Co. v. Aetna Life & Cas. Ins. Co.*, 98 N.J. 18, 483 A.2d 402 (1984), the New Jersey Supreme Court defined an insurance carrier's duty to defend, stating that:

the duty to defend and the duty to indemnify, although different, are closely related and [ ] neither duty exists except with respect to occurrences for which the policy provides coverage. It is irrelevant to the duty to defend whether the suit is well founded or groundless, ... but the duty extends only to claims within the coverage of the policy.

*Id.* at 22, 483 A.2d at 404.

ML & B also claims that New Jersey courts have adopted the principle giving effect to the "objectively reasonable expectations" of the insured for the purpose of rendering a 'fair interpretation' of the boundaries of insurance coverage. *Meier v. New Jersey Life Ins. Co.*, 101 N.J. 597, 612, 503 A.2d 862, 869 (1986) (quoting *Di Orio v. New Jersey Mfrs. Ins. Co.*, 79 N.J. 257, 269, 398 A.2d 1274, 1280 (1979)). However, most of the New Jersey cases in which this policy has been applied are not only clearly distinguishable from the case at bar, but also concern interpretation of ambiguities in environmental-pollution coverage litigation (pollution-exclusion clauses) where the New Jersey courts have noted a strong public policy interest in protecting the insured in its interpretation of insurance contracts in favor of coverage. *See generally Continental Ins. Co. v. Beecham, Inc.*, 836 F.Supp. 1027 (D.N.J.1993); *Owens–Illinois, Inc. v. United Ins. Co.*, 138 N.J. 437, 650 A.2d 974 (1994); *Gottlieb v. Newark Ins. Co.*, 238 N.J.Super. 531, 570 A.2d 443 (1990). Furthermore, the doctrine of "reasonable expectation" applies under the terms of the policy of insurance at issue. Courts have endorsed the principle of "reasonable expectations" of the insured to render a "fair interpretation" of the boundaries of insurance coverage. *Di Orio v. New Jersey Mfrs. Ins. Co.*, 79 N.J. 257, 269, 398 A.2d 1274, 1280 (1979). The rule of liberal construction cannot operate to authorize the perversion of the language and the intention of the contracting parties for the purpose of creating an ambiguity where none exists. The power to bind an insurer must be found in the written contract of insurance and the parties will be bound by the plain language of the contract. *Voorhees v. Preferred Mut. Ins.*, 246 N.J.Super. 564, 583, 588 A.2d 417, *aff'd*, 128 N.J. 165, 607 A.2d 1255 (1992) (citing 13 Appleman, *Insurance Law and Practice* § 7486, at 622–623 (1976)).

better characterized as claims of unfair competition or infringement of title which are covered as advertising offenses under the relevant insurance policies. *See Curtis–Universal, Inc. v. Sheboygan Emergency Medical Services, Inc.*, 43 F.3d 1119, 1122 (7th Cir.1994) ("What is important is not the legal label that the plaintiff attaches to the defendant's (that is, the insured's) conduct, but whether that conduct as alleged in the complaint is at least arguably within one or more of the categories of wrongdoing that the policy covers.") (Plaintiff's Brief at 20). As for Matrix's claim of violation of the New Jersey Consumer Fraud Act, ML & B alleges that this claim is also intertwined with the other claims because it requires a showing of an "unconscionable commercial practice." Specifically, the New Jersey Consumer Fraud Act states that "[t]he act, use or employment by any person of any unconscionable commercial practice ... in connection with the sale or advertisement of any merchandise or real estate ... is declared to be unlawful practice." N.J.S.A. § 56:8–2. ML & B contends also that Hanover conceded coverage for this claim by letter of November 17, 1993. Conversely, Hanover contends that under no circumstances, could the statute ever be construed as supporting a claim of unfair competition, it also argues that "the New Jersey Consumer Fraud Act exists solely for the protection of consumers, not for the protection of competitors." (Defendant's Reply Brief at 30).

█ By the time the *Matrix* litigation was tried before Judge Irenas on October 17, 1994, all claims for monetary damages had been dismissed. The sole issue tried before Judge Irenas during the seven day trial related to injunctive relief. The fees incurred for the trial totalled approximately $35,000. Consequently, the court agrees with Hanover that since the trial involved solely injunctive relief, none of these charges could be assessed to Hanover. Yet, Hanover's agreement to pay the fifty percent of ML & B' bills includes the cost of the trial. Therefore, Hanover had actually paid for fifty percent of the cost of the trial relating to injunctive

relief, a cost that is not expressly covered by the policies.

█ The court also finds persuasive the position of the defendant in asserting that count Four (malicious interference with contractual relations), Five (malicious interference with prospective economic advantage), Six (violation of the New Jersey Consumer Fraud Act) and Eight (with respect to the conspiracy to commit acts of tortious conduct) are not covered by the insurance policies. Although we agree with ML & B that the existence of covered and non-covered claims presents a potential conflict between the insured and the insurer vis-a-vis defense strategy, we believe that the "fifty percent solution" suggested by Hanover is an equitable and fair one under the facts of this case.[3] Furthermore, when Hanover agreed to pay fifty percent of the defense costs in the *Matrix* litigation, it was totally unaware that ML & B had defended not only Cosmetic Gallery and the Eisenbergs in their capacities as officers and stockholders of that company but also had defended C & L Beauty Supply, Inc. and the Eisenbergs as officers and stockholders of that corporation. C & L Beauty Supply was not insured under any Hanover insurance policies and therefore, no obligation was owed to it to pay for its defense or that of the Eisenbergs in their capacities as officers and stockholders of that company. (Defendant's Brief at 26). This is clearly a windfall to those parties who would have been required to pay for their own defense in this matter.

█ The court agrees with Hanover in stressing that C & L Beauty Supply, Inc. and the Eisenbergs in their affiliation with this company received a "free ride", not having to retain independent counsel. The counterclaim filed by Cosmetic Gallery is not covered by Hanover insurance. The insurance policies do not cover affirmative claims asserted by the insured or independent corporations related to the insured, such as C & L Beauty Salon, Inc. Similarly, punitive damages are not covered by Hanover policies.

3. In *Morrone v. Harleysville Mut. Ins. Co.*, 283 N.J.Super. 411, 422, 662 A.2d 562, 566 (1995), the court left to the parties the negotiation of a resolution of a dispute concerning the apportionment of defense costs between covered and non-covered claims.

In fact, the Appellate Division in *City of Newark v. Hartford Acc. and Indem. Co.*, 134 N.J.Super., 537, 342 A.2d 513 (1975), expressly held that "public policy would plainly not permit a defense or indemnification by the carrier for any claim for punitive damages." *Id.* at 547, 342 A.2d at 518. *See also Variety Farms, Inc. v. New Jersey Mfrs. Ins. Co.*, 172 N.J.Super. 10, 25, 410 A.2d 696, 703 (1980) ("In New Jersey, public policy does not permit a tortfeasor to shift the burden of punitive damages to his insurer."). Again, there was no obligation under the Hanover policies for the carrier to afford a defense to Cosmetic Gallery, Inc. or the Eisenbergs for a claim for punitive damages. We are not persuaded that the equities of the case compel imposition of all defense costs against Hanover. Therefore, the reimbursement of $165,263.16 to date by Hanover to ML & B represents equitable compensation to ML & B for the covered claims.

## CONCLUSION:

Having analyzed the proceedings and the nature of the pleadings, the court finds by a preponderance of the evidence that:

1) the duty to defend extends only to claims within the coverage of the policy. The power to bind an insurer must be found in the written contract of insurance, and the parties will be bound by the plain language of the contract. This court cannot rewrite the contract for the parties, nor it is empowered to alter the terms of the same. Accordingly under the plain terms of Hanover's insurance contract, the policy covers only counts: One (violation of the Federal Trademark 1947), Two (trademark infringement and unfair competition under the Lanham Act), Three (trademark infringement and violation of statutory and common law unfair competition under New Jersey laws), Seven (violation of the New Jersey Unfair Competition Act), and that part of the Eighth count concerning conspiracy to commit acts of trademark infringement and unfair competition. Hanover's insurance policies do not cover counts: Four (malicious interference with contractual relations), Five (malicious interference with prospective economic advantage), Six (New Jersey Consumer Fraud Act) and that part

of the Eighth count relating to conspiracy to commit acts of tortious conduct.

2) Furthermore, the counterclaim asserted against Matrix by Cosmetic Gallery, C & L Beauty Supply and the Eisenbergs together with the punitive damages claim against Cosmetic Gallery in the *Matrix* litigation, do not fall within the scope of coverage of Hanover's policies.

3) C & L Beauty Supply and Charles and Larry Eisenberg in their capacities as officers and stockholders of C & L Beauty Supply are not named insureds under Hanover's policies and therefore there is neither a duty to defend these entities nor a duty to indemnify ML & B for the expenses incurred in defending them.

4) Finally, this court agrees with Hanover in asserting that the costs incurred by ML & B in the defense of the trial before Judge Irenas do not fall within the scope of coverage of the insurance policy since it concerned exclusively recovery for injunctive relief.

The court finds by a preponderance of the evidence that the reimbursement by Hanover to ML & B to date is fair and reasonable.

Therefore, for the reasons noted above, the motion of plaintiff for summary judgment shall be **denied** and the motion of defendant shall be **granted.**