**In re GRAND COURT LIFESTYLES, INC., Debtor,**

**Grand Court Lifestyles, Inc., Plaintiff,**

v.

**Michael Cohen, Jeffrey Kerner, Bernand Glintz, Millicent Rudolph, Genesis Insurance Company, Defendants.**

Bankruptcy No. 00–32578(NLW). Adversary No. 01–3725.

United States Bankruptcy Court, D. New Jersey.

March 24, 2004.

---

Jeffrey M. Pollock, Sills, Cummis, et al., Newark, NJ, for Plaintiff.

Bruce Wisotsky, Ravin Greenberg, PC, Roseland, NJ, Lewis K. Loss, Ross, Dixon & Bell, LLP, Washington, DC, for Defendant Genesis Insurance Co.

## OPINION

NOVALYN L. WINFIELD,
Bankruptcy Judge.

Before the Court is a motion by Genesis Insurance Co. ("Genesis") to dismiss the First Amended Verified Complaint and Demand for Judicial Declaration (the "Complaint") filed by Grand Court Lifestyles, Inc. ("Grand Court" or "Debtor"). Grand Court filed its Complaint to obtain a declaration (i) that it is entitled to coverage under the Genesis Directors & Officers Liability Insurance Policy ("D & O Policy") for any recovery obtained by the Official Committee of Unsecured Creditors (the "Committee") in the adversary proceeding which the Committee commenced against the Directors and Officers of Grand Court ("D & O Action"), and (ii) that Genesis cannot obtain reimbursement of any defense costs which it advances in connection with the D & O Action.

Genesis maintains that dismissal of the Complaint is warranted because the matters on which Grand Court seeks declaratory Judgment are not ripe for adjudication. It argues that because there has not been any determination of liability in the D & O Action, its duty to indemnify Grand Court is not ripe for consideration. Genesis also argues that it may not have any obligation to indemnify Grand Court because litigation of the D & O Action may result in findings about the conduct of the Directors and Officers of Grand Court which will fall under such policy exclusions as the Fraud/Dishonesty Exclusion or the Unlawful Profit Exclusion. As set forth at greater length below, the Court concludes that this matter is not ripe for consideration.

Jurisdiction to hear and determine this matter exists pursuant to 28 U.S.C. §§ 1334 and 157(a). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). The following constitutes the findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052.

## BACKGROUND

On March 20, 2000 Grand Court filed its petition for relief under Chapter 11 of the Bankruptcy Code. At the time of its bankruptcy filing Grand Court managed numerous senior living communities, providing both independent and assisted living services. Historically, the Debtor's revenues were derived from the sales of interests in limited partnerships that were formed to acquire either multi-family properties or senior living communities, and the fees associated with managing those properties.

During the Chapter 11 case two events of significance to the present litigation occurred: (i) in July, 2002 the Committee commenced the D & O Action, and (ii) the Grand Court reorganization plan was confirmed on September 4, 2002, pursuant to an order of that same date. Under paragraph G.2 of the confirmation order, actions against the Directors and Officers were enjoined subject to the following:

> [T]he injunction provided for by this Order shall not include actions commenced against any of the Released Persons or the Outside Directors to the extent that (i) the Released Persons and Outside Directors are or were officers or directors of the Debtor; and (ii) the actions and the officers and directors are covered by the Debtor's Directors and Officers Liability Insurance or similar insurance policies which coverage actually defends, holds harmless and completely protects the affected Released Persons and Outside Directors from any and all costs and liability.

The Committee's D & O Action contains six counts. Five of the counts are prem-

ised on the claim that all current and/or former Directors and Officers breached their fiduciary duty and duty of due care to Grand Court and its creditors. The sixth count is asserted on behalf of the Creditors and claims negligent misrepresentation by the Directors and Officers. The Committee summarizes the alleged misconduct by stating that the Officers and Directors:

knowingly, intentionally, recklessly, and/or negligently made, or permitted others to make, or recklessly and/or negligently failed to prevent others from making, false and misleading statements concerning Grand Court's financial condition in violation of applicable law. The misrepresentations concealed the severity of the Company's financial problems, and enabled the Company to obtain additional credit from creditors that it otherwise would have been unable to obtain, all of which led to the Company's financial ruin and its inability to repay its indebtedness. (D & O Complaint, ¶ 1.)

To understand the D & O Action and the Genesis position with regard to Grand Court's request for declaratory relief it is helpful to understand the Debtor's operations and the Committee's contentions regarding the actions by the Directors and Officers. The next few paragraphs provide a simplified description of the Debtor's operations and are intended only to provide context for the matter at hand. The operations and financial history of Grand Court are much more complex, but such detail is not necessary for the issues presently before the Court.

Grand Court acquired senior living communities by using mortgage financing and through syndications of limited partnerships ("Investing Partnerships") formed to acquire ownership interest in separate limited partnerships ("Owning Partnerships") formed by Grand Court to own the underlying senior living communities. (D & O Complaint, ¶ 25).

Typically, Grand Court or a wholly-owned subsidiary was the managing general partner and initially, the owner of all of the partnership interests in the Owning Partnership. The Investing Partnership was formed to purchase from the Debtor or its subsidiary a 99% partnership interest in the Owning Partnership. Generally, the Debtor or its subsidiary remained as general partner with a 1% interest in both the Owning Partnership and the Investing Partnership.

The Investing Partnership acquired its interest in the Owning Partnership by giving cash and a note for the remainder of the purchase price ("Purchase Note") to the Debtor or its subsidiary. Limited partnership interests in the Investing Partnerships were sold to investors either for cash, or a combination of cash and a promissory note in favor of the Investing Partnership ("Investor Notes").

An Investing Partnership collateralized its payments on the Purchase Notes by its limited partnership interest in the Owning Partnership, and by assignment of the Investor Notes given by investors to acquire their limited partner interests. Accordingly, in the event of default on either a Purchase Note or an Investor Note Grand Court could acquire the partnership interest. However, the only asset of the partnerships was either the multi-family property or the senior living community. Therefore, the value of both the Purchase Notes and the Investor Notes were dependent on the value of the underlying properties.

The value of both the Purchase Note and Investor Notes, and the valuation of the properties are the primary focus of the D & O Action. The Committee contends that the appraisals of the properties were

inaccurate and overstated. (D & O Complaint, ¶ 40–41). The Committee further contends that the inaccurate appraisals caused the "notes and receivables" category of assets on the Grand Court financial statement to be overstated. (D & O Complaint, ¶ 42–43). Likewise, the Committee contends that the Grand Court debt offerings collateralized by its interest in the Purchase Notes and Investor Notes were tainted by the overstated valuations. (*Id.*). The Committee alleges that the Officers and Directors of Grand Court either participated in the use of the appraisals knowing of their inaccuracy, or negligently permitted the use of the appraisals. (D & O Complaint ¶ 49–58). The damage which allegedly resulted from this conduct was a deepening of the Debtor's insolvency, to the detriment of the corporation and its creditors. (*Id.*, at 59–66).

Up to a limit of $10,000,000 and subject to all of its terms, conditions and limitations, the D & O Policy provides coverage for certain losses which arose from claims first made against the Grand Court Directors and Officers during the Policy Period or the Discovery Period. (Duchelle Decl., Ex. 4). The D & O Policy further specifies that Genesis will pay all covered loss "which the DIRECTORS or OFFICERS shall become legally obligated to pay," and Genesis will reimburse Grand Court for all covered loss "which the COMPANY is required to indemnify, or for which the COMPANY has to the extent permitted by law indemnified the DIRECTORS or OFFICERS." (*Id.*, at Sec. I.A. and I.B.). Loss is defined in the D & O Policy to include damages, judgments, settlements and costs of defense. (*Id.*, Sec.II.F.).

The D & O Policy explicitly provides that it is the duty of the Directors and Officers, and not the duty of Genesis, to defend against a claim. (*Id.*, Sec. VI.C).

However, it also states that upon request, Genesis shall advance defense costs to Grand Court prior to disposition of a claim, provided that Grand Court repays the defense costs advanced if Genesis has no ultimate liability under the policy. (*Id.*, Sec. VI.B).

Genesis also observes that the D & O Policy contains various exclusions which may ultimately bar coverage depending upon the facts which are established, as opposed to the circumstances alleged in the Committee's D & O Action. Genesis points out that among other exclusions, the D & O Policy bars coverage for losses resulting from fraudulent, dishonest or criminal acts, as well as losses resulting from unlawful profit derived by the Directors, Officers or Grand Court. (*Id.*, Sec. IV.B and IV.D). In fact, on receiving the initial and amended complaint in the D & O Action Genesis issued a coverage opinion letter in which it advised Grand Court that it reserved its right to deny coverage based on various policy exclusions including the ones just described. (Duchelle Decl., Exs. 5 and 6). However, Genesis also informed Grand Court and the Directors and Officers that it would advance the defense costs of the Directors and Officers, subject to its right to recover such costs in the event that the D & O Policy does not cover the loss.

### *DISCUSSION*

Grand Court contends that its request for declaratory relief is not an ordinary insurance coverage dispute because the confirmed Chapter 11 Plan enjoins suit against the Directors and Officers unless the D & O Policy protects them from all costs and liability. Grand Court therefore asserts that it is necessary to determine whether coverage exists as a predicate to the Committee continuing its D & O Action. Moreover, Grand Court argues that

the bankruptcy estate is in immediate danger of being diminished by the Committee's attorney fees, which may prove to have been needlessly incurred if insurance coverage is not determined until after the D & O Action is tried or settled.

By contrast, the Genesis motion to dismiss is premised on its contention that the request for declaratory relief is not ripe. Genesis argues that at present, its interests are not adverse to those of Grand Court, because there has not yet been an adjudication of the nature or extent of any liability on the part of the Directors and Officers. It maintains that a determination of whether any of the policy exclusions apply can only be made when concrete facts have been ascertained, and until that time any determinations of coverage are premature. The Court finds the Genesis position to be persuasive.

■■■ The concept of ripeness is a component of the Constitution's limitations of the judicial power to real cases and controversies. *Presbytery of New Jersey v. Florio,* 40 F.3d 1454, 1462 (3d Cir.1994). The ripeness requirement "... stands as a direct prohibition on the issuance of advisory opinions." *Armstrong World Indus., Inc. v. Adams,* 961 F.2d 405, 410 (3d Cir.1992).

■■ It has been observed that determining ripeness in the context of a declaratory judgment action is difficult because the Declaratory Judgment Act authorizes, but does not require the Court to declare the rights of the parties, and declaratory judgments are issued before actual injury can be established. *Step–Saver Data Sys., Inc. v. Wyse Tech.,* 912 F.2d 643, 646–47 (3d Cir.1990). The Court further noted that "... this *ex ante* determination of rights exists in some tension with traditional notions of ripeness," and cautioned that:

> The discretionary power to determine the rights of parties before injury has actually happened cannot be exercised unless there is a legitimate dispute between the parties.

*Id.*

■■■ As guidance for a determination of ripeness in the context of a declaratory judgment action, the Third Circuit articulated three principles which should be considered: (i) the adversity of the interest of the parties, (ii) the conclusiveness of the judicial judgment, and (iii) the practical help, or utility, of the judgment. *Id.*

### A. *Adversity of Interest*

Grand Court seems to argue that the parties have adverse legal interests because its confirmed Plan restricts satisfaction of claims against the Directors and Officers to the D & O Policy proceeds, and Genesis has advised that (i) it reserves its right, pursuant to various policy provisions, to exclude coverage, and (ii) it will advance defense costs subject to its right to seek reimbursement from the Directors and Officers in the event that it is determined that the claims in the D & O Action do not fall within the coverage terms of the D & O Policy. Grand Court contends that the Creditors' Committee cannot know whether the D & O Action is barred by the Plan until a determination is made whether the D & O Policy provides coverage. Grand Court additionally urges that the present need to know the extent of coverage afforded by the D & O Policy is particularly great because the fees and expenses incurred in litigating the D & O Action are payable from the bankruptcy estate, and likewise, in the event that Genesis is entitled to reimbursement of defense costs, that cost will be borne by the bankruptcy estate. The feared result is that the financial burden of these expenses will impair the ability to make payments to creditors.

A complete harm is not a prerequisite to establish adversity of interest between parties. *Armstrong,* 961 F.2d at 412. In some cases, present harm can flow from a threat of future action. *Id.* However, this Circuit has also held that:

> In order to present a justiciable controversy in an action seeking a declaratory judgment to protect against a feared future event, the plaintiff must demonstrate that the probability of that future event occurring is real and substantial.

*Salvation Army v. Dep't of Comty. Affairs of the State of New Jersey,* 919 F.2d 183, 192 (3d Cir.1990).

Applying this concept of adversity to the allegations on which Grand Court's assertion of adversity is based, it is apparent that Grand Court presently can only show that litigation of the D & O Action might result in factual findings to which the D & O Policy exclusions might apply, and that Genesis might then seek reimbursement of defense costs.

In effect, as in *Step–Saver,* Grand Court's request for declaratory relief is premised on a contingency, and the parties before this Court are likewise insufficiently adverse. *Step–Saver* sought a declaratory judgment that certain of its hardware and software suppliers were liable if certain of Step–Saver's customers succeeded in proving that the Step–Saver products contained defects. The Third Circuit found a lack of adversity in part because Step–Saver had not yet been found liable. 912 F.2d at 647–48. Similarly, in this matter, adversity will only exist if the litigation of the D & O Action results in findings about the Directors and Officers to which the D & O Policy exclusions might apply. At present, it is simply not possible to know what facts will be established regarding the preparation of the appraisals, how those appraisals were used by Grand Court, and what the Directors and Officers knew and understood about their use. The D & O Action largely alleges negligent conduct, but the facts as proved, could ultimately establish intentional misconduct, or indeed, that the conduct of the Directors and Officers was neither negligent or fraudulent. Obviously then, it is not possible to predict the probability of any outcome, much less the one desired by Grand Court.

Nor is there any adversity of interest between the parties as a consequence of Genesis reserving its right to seek reimbursement of defense costs it advances. As Genesis points out, by providing defense costs subject to its right to seek reimbursement, it is simply performing its contractual obligation, which can hardly constitute conduct creating adversity. By its very terms the D & O Policy makes it plain that the duty to defend lies with the Directors and Officers, and not Genesis.[1] Further, the policy clearly provides that if Genesis is requested to advance defense costs for the Directors and Officers, it does so subject to the Insured's agreement to repay these costs "... in the event and to the extent that the DIRECTORS and OFFICERS or [Grand Court] shall not be entitled to payment of such amounts under the terms and conditions of this Policy." (Duchelle Decl., Ex. 4 ¶ VI.B.(1)). If granted, the declaratory relief sought by Grand Court would create an insurance contract plainly at variance with the language just quoted and therefore different from the one made by the parties. Courts have cautioned that a court should not redraft an insurance policy to provide a party with a better contract than the one to which he agreed. *See, Brokers Title*

---

1. "It shall be the duty of the DIRECTORS and OFFICERS and not the duty of the INSURER to defend CLAIMS." (Duchelle Decl., Ex. 4 at ¶ VI. C.)

*Co., Inc. v. St. Paul Fire & Marine Ins. Co.,* 610 F.2d 1174, 1181 (3d Cir.1979); *Morgan Lewis & Bockius, LLP v. Hanover Ins. Co.,* 929 F.Supp. 764, 770 (D.N.J. 1996); *American Cas. Co. v. Continisio,* 819 F.Supp. 385, 404 (D.N.J.1993). Accordingly, this Court declines to find an adversity of interest merely because the terms of its confirmed plan compels Grand Court to wish for a policy that pays for defense costs without regard to whether the claims are covered.

### B. *Conclusiveness*

Primarily for the same reasons that the parties are not adverse, any declaratory relief will not conclusively define or clarify the legal rights of the parties. Genesis points to *Travelers Ins. Co. v. Obusek,* 72 F.3d 1148, 1155 (3d Cir.1995) as establishing that:

> An integral part of the conclusiveness inquiry is the necessity that the court be presented with a set of facts from which it can make findings. Without a concrete set of facts, the court cannot engage in its required fact-finding role and declare the parties' rights based on those facts. Without the necessary facts, the court is left to render an advisory opinion.

At present, because the D & O Action is not concluded, there are simply no concrete facts from which this Court can determine that Genesis is obligated to indemnify Grand Court or the Directors and Officers.

At oral argument it was suggested that certain of the D & O Policy exclusions are sufficiently ripe so that declaratory judgment would be appropriate as to them. For example, whether the insured v. insured exclusion is applicable, or whether the claim was timely made are arguable sufficiently concrete. However, even if these issues were decided in favor of Grand Court, their disposition would not

materially advance the litigation. The heart of the D & O Action is whether the conduct of the Directors and Officers constitutes negligence, and is therefore within the coverage of the Policy. Until the matter is litigated, we cannot know whether the conduct of the Directors and Officers amounted to negligence, fraud, or perhaps, proper exercise of their judgment. The facts will only be sufficiently concrete at that point.

### C. *Utility*

■ As observed in *Step–Saver,* the purpose of the Declaratory Judgment Act is to clarify legal relationships so that the parties can make responsible decisions about the future. 912 F.2d at 649. This criteria plainly cannot be met because its is presently sheer speculation whether any liability will be found which will give rise to a covered liability.

### CONCLUSION

The verified complaint filed by Grand Court for declaratory relief must be dismissed because the claims are not ripe, and therefore are not justiciable.